UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI DESHALLA,

           Plaintiff,                  Case No. 2:16-cv-13074

                                      District Judge Denise Page Hood

v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

_____/

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15), DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14) AND AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 15), **DENY** Plaintiff's motion for summary judgment (DE 14), and

**AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Lori Deshalla, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

benefits ("DIB").  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

14), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 15), Plaintiff's reply (DE 16), and the administrative record (DE 12).

## A.    Background

On June 9, 2014, Plaintiff filed an application for DIB, alleging she has been disabled since April 6, 2013.  (R. at 26, 182-83.)  Plaintiff's application was denied (R. at 124-28) and she sought a *de novo* hearing before an administrative law judge ("ALJ").  ALJ Janet L. Alaga-Gadigian held a hearing on March 15, 2016.  (R. at 45-81.)  On March 28, 2016, ALJ Alaga-Gadigian issued an opinion finding Plaintiff to not be disabled.  (R. at 26-40.)   The Appeals Council denied Plaintiff's request for review on July 11, 2016.  (R. at 1-4.)  ALJ Alaga-Gadigian's decision thus became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

## B.    Plaintiff's Medical History and Hearing Testimony

The bulk of Plaintiff's physical impairments appear to have begun after she underwent fertility treatments and gave birth to her daughter at age 34.  Soon after, she was diagnosed with Raynaud's syndrome.  (R. at 261.)  The Raynaud's appears to mainly cause pain in her breasts and nipples, as well as impact her ability to

adjust to hot or cold temperatures.  (R. at 61-62, 265.)[1]  Plaintiff complains of

dizziness and falling.  (R. at 69, 72, and 254.)  She underwent a hysterectomy on

October 15, 2013.  (R. at 302.)  She later sought out a mastectomy to address her

breast pain, but was told that the procedure could not ethically be performed for

pain alone.  (R. at 60 and 257.)

Additionally, Plaintiff suffers degenerative disc disease in her left knee,

exacerbated by obesity, and was prescribed a cane. (R. at 792.)  She has also been

diagnosed with hypersomnia and obstructive sleep apnea.  (R. at 785 and 787.)

She testified that she does not sleep well at night and naps throughout the day.  (R.

at 65.)

C.    **Vocational Expert's Testimony**

Vocational Expert ("VE") Scott Silver classified Plaintiff's prior work as a

resident manager, mental health technician, direct care provider, case manager,

geriatric resource coordinator, and recreation director.  (R. at 56.)  The ALJ then

asked the VE a series of hypothetical questions.  First, she asked whether a person

---

[1] Raynaud's syndrome "causes some areas of your body — such as your fingers and toes — to feel numb and cold in response to cold temperatures or stress. In Raynaud's disease, smaller arteries that supply blood to your skin narrow, limiting blood circulation to affected areas (vasospasm)."  Mayo Clinic, *Raynaud's Disease*, available at http://www.mayoclinic.org/diseases-conditions/raynauds-disease/basics/definition/con-20022916 (last viewed August 7, 2017).  In some women, Raynaud's can also impact the breast and nipple, often as a result of pregnancy or breastfeeding.  Raynaud's Association, *Help for Pregnant and Breastfeeding Moms*, available at http://www.raynauds.org/2011/02/08/help-for-pregnant-breastfeeding-moms/ (last viewed August 7, 2017).

of Plaintiff's age, education, and work experience could perform her past relevant work with the following limitations:

> They are restricted to a range of sedentary work as defined by the regulations. There should be no climbing of ladders, ropes, scaffolds; no more than occasional crawling, balancing, climbing of ramps, stairs, stooping, crouching, kneeling. There should be no exposure to hazardous machinery or unprotected heights, avoiding all exposure to extreme cold or heat, avoiding all exposure to wetness or humidity, no exposure to vibration. The work is limited to unskilled work with simple, routine, repetitive tasks in a low-stress environment.

(R. at 78-79.) The VE testified that the hypothetical individual could perform jobs including addresser, with 104,000 positions nationwide and bench assembler, with 277,000 positions nationwide. (R. at 79.) The VE verified that these jobs would remain available with the added restriction that there be "no interaction with the general public, no more than occasional interaction with coworkers and supervisors, with no tandem task being required." (R. at 80.) However, the VE testified that missing work twenty percent of the time would be work preclusive. (Id.)

### D. The Administrative Decision

In her March 28, 2016 decision, the ALJ first concluded that Plaintiff met the insured status requirements through December 31, 2015. (R. at 29.) At **Step 1** of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4).

in substantial gainful activity during the period from her alleged onset date of April

6, 2013 through her date last insured of December 31, 2015.  (Id.)

At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments:  Raynaud's disease, obesity, major depressive disorder, post-

traumatic stress disorder, generalized anxiety disorder, history of conversion

disorder, and left knee patellar early osteoarthritis (severe in combination with

obesity).  (R. at 29.)  At **Step 3**, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1,

specifically Listings 14.00, 12.04, and 12.06.  (R. at 31-32.)

---

Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential
review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Prior to undertaking Step 4, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that she could perform sedentary work,[4] with the following limitations:

> No climbing of ladders/ropes/scaffolds; no more than occasional crawling, balancing, stooping, kneeling, crouching; no more than occasional climbing ramps/stairs; no exposure to hazardous machinery or unprotected heights; avoid all exposure to extreme cold/heat; no exposure to wetness/humidity; no exposure to vibration; unskilled work with simple, routine, repetitive tasks in a low stress environment, defined as a routine work setting, self-paced; no interaction with the general public; occasional interaction with coworkers and supervisors; no tandem tasks required.

(R. at 33.)  At **Step 4**, the ALJ concluded that Plaintiff could not perform her past relevant work.  (R. at 38.)  At **Step 5**, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. (Id.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 39.)

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §404.1567(a).

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to

benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F. Analysis

Plaintiff advances two main arguments as to why the ALJ committed reversible error warranting remand. First, she asserts that the ALJ's Step 3

decision is not supported by substantial evidence.  Second, she contends that the ALJ erred in her weighing of opinion evidence with respect to her treating physician, Dr. Paul Ehardt.  The Commissioner opposes the motion, arguing that the ALJ's decision is supported by substantial evidence.  I will address each argument in turn.

### 1.  The ALJ did not err at Step 3.

The ALJ found that Plaintiff has the severe impairment of Raynaud's disease.  (R. at 29.)  She then went on to Step 3 to conclude that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of any of the listed impairments.  (R. at 31.)  Plaintiff now argues that the ALJ's failure to fully explain why her impairment did not meet Listing 14.04 constitutes legal error.

### a.  Listing 14.04

Plaintiff bears the burden of proving that her impairments meet or medically equal a particular listing.  *See Buress v. Sec'y of Health & Hum. Serv's*, 835 F.2d 139, 140 (6th Cir. 1987).  The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).  "A claimant must satisfy all of the criteria to meet the

listing." *Rabbers*, 582 F.3d at 653.  Moreover, all of the criteria must be met

concurrently for a period of twelve continuous months.  *See* 20 C.F.R.

§404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00D ("[b]ecause

abnormal physical findings may be intermittent, their presence over a period of

time must be established by a record of ongoing management and evaluation").

Listing 14.04 provides as follows:

a. General. Systemic sclerosis (scleroderma) constitutes a spectrum of disease in which thickening of the skin is the clinical hallmark. Raynaud's phenomenon, often medically severe and progressive, is present frequently and may be the peripheral manifestation of a vasospastic abnormality in the heart, lungs, and kidneys. The CREST syndrome (calcinosis, Raynaud's phenomenon, esophageal dysmotility, sclerodactyly, and telangiectasia) is a variant that may slowly progress over years to the generalized process, systemic sclerosis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1,§ 14.04.[5]  The ALJ addressed this Listing by

stating the following:

Raynaud's syndrome does not have its own specific listing, but is included as part of other listings in Listing 14.00, which addresses Immune System Disorders, whether a primary disorder or developed as a result of other conditions.  When secondary, the Raynaud's syndrome is adjudicated based upon the condition causing it.  Listing 14.00 has been evaluated in its entirety, and the claimant's condition does not meet the requirements of any sub-listing.

---

[5] Listing § 14.04 was revised, effective March 27, 2017.  However, the ALJ would have evaluated Plaintiff's condition pursuant to the former Listing.  As such, any citation to the Listing reflects the pre-March 2017 version relied upon in the parties' briefs.

(R. at 31.)  Plaintiff argues that this is an insufficient analysis that leaves the Court

to speculate as to why she did not meet the Listing. Defendant counters that, while

the ALJ could have provided more information within that section of her analysis,

the remainder of her opinion supports her conclusion that Plaintiff's impairment

did not meet or equal Listing 14.04.  I agree with Defendant.

The Sixth Circuit has explained that the ALJ need "not spell[] out every

consideration that went into the step three determination." *Bledsoe v. Barnhart*,

165 F. App'x 408, 411 (6th Cir. 2006).  Instead, the ALJ must "review all evidence

of impairments to see if the sum of impairments is medically equivalent to a 'listed

impairment," describe the evidence pertaining to the impairment, and state that he

or she has considered the combination of all impairments. *Id.*  Put another way,

"[i]f the necessary Step Three analysis appears elsewhere in the ALJ's decision, a

court may find that it was also considered by the ALJ at Step Three even if it is not

duplicated there." *Beden v. Comm'r of Soc. Sec.*, No. 2:14-CV-14727, 2015 WL

5965006, at *13 (E.D. Mich. Sept. 18, 2015), *report and recommendation adopted*,

2015 WL 5936324 (E.D. Mich. Oct. 13, 2015).

Here, while the ALJ's analysis at Step 3 is somewhat perfunctory, she

addresses the evidence related to Plaintiff's Raynaud's syndrome throughout the

opinion.  She first mentions Plaintiff's treatment with Dr. Paul Ehardt, and the fact

that he prescribed Cialis to address her Raynaud's syndrome.  The ALJ points out

that the ALJ did not treat with Dr. Ehard from January 2014 to June 2014, and had

very little treatment after that date.  (R. at 34.)  The ALJ further analyzes Plaintiff's

treatment for Raynaud's, noting that while the medical evidence establishes the

diagnosis, her treatment for the condition has been "scant," including only one

appointment with a breast specialist on July 23, 2013, a follow-up appointment in

June 2014, and no other consistent or ongoing treatment after that point.  The ALJ

concludes that the combination of Plaintiff's lack of treatment along with

consistently normal physical examinations fails to corroborate her allegations that

Raynaud's syndrome is disabling.  (R. at 35.)

### b.  Listing 14.04A

Plaintiff next attempts to point to evidence in the record demonstrating that

she meets Listing 14.04A.  To establish that an impairment meets Listing 14.04A,

the claimant must first establish systemic sclerosis, of which Raynaud's is one.  20

C.F.R. § Pt. 404, Supbpt. P, App. 1, § 14.00D3.  In addition, the claimant must

establish

> 1. One of the organs/body systems involved to at least a moderate
> level of severity; and

> 2. At least two of the constitutional symptoms or signs (severe fatigue,
> fever, malaise, or involuntary weight loss).

Id. at 14.04A.  Plaintiff argues that there is evidence in the record to establish that

her breast pain is at least at a moderate level, thus establishing the first

requirement.  Plaintiff first points the Court to a March 18, 2013 letter from Dr.

Elena Schiopu to Dr. Erhardt, summarizing Plaintiff's complaints of Raynaud's

"that is affecting primarily her breasts and her feet."  (R. at 260.)  She next relies

on a January 2, 2014 report from Dr. Ehardt indicating that Plaintiff reported breast

pain.  (R. at 267.)  Likewise, the June 3, 2014 report from Dr. Khalil indicates that

Plaintiff was "tearful with significant pain."  (R. at 475.)  In sum, the medical

reports on which she relies consist of her own report of pain.  (R. at 267.)

However, the ALJ found her subjective reports to not be credible, in a very direct

statement citing, among other things, the lack of restrictions recommended by her

treating doctor and her "generally unpersuasive appearance and demeanor while

testifying at the hearing."  (R. at 37.)  The ALJ's "assessment of credibility is

entitled to great weight and deference, since [she] had the opportunity to observe

the witness's demeanor."  *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir.

2008).  "It is of course for the ALJ, and not the reviewing court, to evaluate the

credibility of witnesses, including that of the claimant."  *Rogers*, 486 F.3d at 247.

It is for this reason that the ALJ's credibility findings have at times been

characterized as "unchallengable."  *Payne v. Comm'r Soc. Sec.*, 402 F.App'x 109,

113-114 (6th Cir. 2010).  Plaintiff does not challenge her credibility finding.

Furthermore, the fact that she made these statements to physicians does not

transform them from subjective complaints into medical opinions.  *See Morris v.*

13

*Barnhart*, 78 F. App'x 820, 824-35 (3d Cir. 2003) (noting that "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion."). As such, Plaintiff has failed to demonstrate that the ALJ erred in her consideration of Listing 14.04 at Step 3.

### 2. The ALJ properly weighed the opinion evidence.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating

source, the physician must have an "ongoing treatment relationship" with the

claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[6]  *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

---

[6] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson*, 378 F.3d at 547). *See also, Betty v. Comm'r of Soc.*

*Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016),

*report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554

(E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the

importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir.1999). The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

For the reasons stated below. I find that the ALJ's opinion gives good

reasons for discounting the medical opinions at issue and that the Commissioner

has met the goal of § 1527(c). *Francis*, 414 F.App'x at 805 (quoting *Wilson,* 378

F.3d at 547). I also find that the opinion "'permits the claimant and [this]

reviewing court a clear understanding of the reasons for the weight given [to the]

treating physician's opinion[.]'" *Francis,* 414 F.App'x at 805 (quoting *Friend*, 375 F.App'x at 550).

Plaintiff argues that the ALJ violated the procedural aspects of the treating physician rule by failing to give good reasons for her assignment of "limited weight" to Dr. Erhardt's opinion. (R. at 36.) Dr. Erhardt completed a physical RFC questionnaire on March 21, 2016, in which he opined that Plaintiff was extremely limited. Among other things, he indicated that she would be off-task at least 25% of the time, she was incapable of even low stress jobs, she could not walk without pain, she could sit or stand for less than two hours in an eight hour workday, would need unscheduled breaks, and would miss more than four days of work per month. (R. at 794-97.) While the ALJ recognized that Plaintiff had a significant treatment history with Dr. Erhardt (R. at 34), she concluded that the extremely conservative RFC he proposed in March 2016 was inconsistent with the fact that he had not significantly treated Plaintiff since May 2015. (R. at 36.) Such an inconsistency is a proper reason to reject the opinion of a treating physician. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (the ALJ is "not bound by conclusory statements of doctor, particularly where they are unsupported by detailed objective criteria and documentation." (internal quotation omitted)). In fact, during the period relevant to this matter (from April 6, 2013 through March 28, 2016), Dr. Erhardt treated Plaintiff only from April 2013 to May 2014. (R. at

267-273 and 280-82.) Moreover, the ALJ's critique of Dr. Erhardt's opinion is consistent with her frequent notations of gaps in treatment, all of which led her to ultimately discount Plaintiff's credibility with respect to the severity of her issues. The ALJ clearly applied the *Wilson* factors in her analysis, specifically addressing the length of the treatment relationship with respect to the relevant time period, the frequency of the treatment, and the supportability of Dr. Erhardt's opinion with the record as a whole. (R. at 34 and 36.) Accordingly, I find no error with the ALJ's reason for discounting Dr. Erhardt's extremely restrictive opinion. **G.**

**Conclusion**

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits to Plaintiff. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 23), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 7, 2017          s/Anthony P. Patti
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE

20

I hereby certify that a copy of the foregoing document was sent to parties of record on August 7, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti